**United States District Court**
**Northern District of California**

| | |
|---|---|
| **REMINGTON PARTNERS, INC.,**<br><br>   Plaintiff,<br><br>v.<br><br>**DEBUT BROADCASTING CORPORATION, INC.,**<br><br>   Defendant. | Case No.: 3:12-cv-2978-JSW (KAW)<br><br>**REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |

Plaintiff Remington Partners, Inc., moves for default judgment against Defendant Debut Broadcasting Corporation, Inc. For the following reasons, the Court recommends that the motion for default judgment be granted, and that judgment be entered against Defendant.

## I. Procedural Background

Plaintiff filed this case on June 8, 2012. On July 30, 2012, Plaintiff filed an ex parte motion for a temporary restraining order preventing Defendant from encumbering its assets, and requested that the Court issue an Order to Show Cause why a preliminary injunction against Defendant should not issue. On the same day, Plaintiff filed a motion for entry of default by the Clerk. Judge White denied Plaintiff's motion for a temporary restraining order without prejudice on August 1, 2012.

The Clerk of the Court entered default against Defendant on August 3, 2012. On October 18, 2012, Plaintiff filed a motion for default judgment, which Judge White referred to the undersigned. Defendant did not file an opposition to the motion for default judgment.

The hearing on the motion for default judgment was set for December 6, 2012. No appearance was made by either Plaintiff or Defendant. The Court ordered Plaintiff's counsel to show cause why he should not be sanctioned for failing to appear at the hearing, and to submit

supplemental briefing 1) explaining how the Court has personal jurisdiction over Defendant in this action, and 2) containing an updated calculation of damages. Plaintiff filed a response on December 20, 2012.

## II. Facts

The following facts are contained in the complaint, attached exhibits, and counsel's declaration in support of the motion for default judgment. Plaintiff is incorporated in and has its principal place of business in California. Defendant is incorporated in Nevada with its principal place of business in Tennessee.

On January 21, 2008, Plaintiff loaned Defendant $250,000. In February 2008, Plaintiff loaned Defendant an additional $500,000, and the parties agreed that both loans would be secured by a security interest in Defendant's assets. The parties signed a security agreement.

In October 2009, the parties discussed modifying the loans. The modification involved converting half of the loan principal, that is, $375,000, into shares in the Defendant company, and signing a new note for the remaining $375,000.

On January 11, 2010, the parties executed the new note for $375,000, which purported to incorporate the terms and conditions of the original security agreement. The terms of the note provide that Defendant was to make monthly interest payments on the loan of $4,062.50 on the first day of each month for one year beginning on February 1, 2010. Beginning on February 1, 2011, Defendant was to make monthly payments of $8,532.40 in interest and principal. 13% annual interest was to accrue on the unpaid principal. Any payment that was more than 10 days late was to accrue an additional annual 2% on the amount due until it was paid.

Defendant has not made any payments on the debt since the end of February 2011. Prior to February 2011, Defendant had not made all of its scheduled payments, and therefore the total amount owed was greater than the original amount of the note.

The January 11, 2010 note states "[t]his note supersedes those two Promissory Notes dated January 21, 2008 and February 26, 2008 by and between the parties thereto, both of which are hereby declared void." It further states, "[t]his note and the attached Rider are subject to the terms

and conditions of the Security Agreement dated February 26, 2008, previously executed between the parties."

Plaintiff has provided two copies of the February 26, 2008 security agreement. One copy has the date "February 28" crossed out, and "March 11" handwritten above it.[1]

Plaintiff's counsel's declaration states that he notified the CEO of Defendant of this action through his last known contact information and through email; has spoken to the CEO about the action; and provided notice by email regarding the motion for default judgment.

**III. Analysis**

Plaintiff's motion requests that the Clerk of the Court enter default judgment pursuant to Federal Rule Civil Procedure 55(b)(1). Under this section of the rule, the Clerk may enter default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." By referring the motion for default judgment to the undersigned, Judge White implicitly found entry of default judgment by the Clerk was not appropriate. Accordingly, the Court considers the motion for default judgment under Rule 55(b)(2).

Rule 55(b)(2) permits a court to enter a default judgment in a case where the clerk has already entered the party's default. The entry of default against the defendant does not automatically entitle a plaintiff to a default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The court has discretion to grant or deny a motion for default judgment. *Id.*

**A. Jurisdiction and Service**

Before granting a motion for default judgment, a court must confirm that it has jurisdiction over the case. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court should also assess the adequacy of service on the defendant. *See*, *e.g.*, *United States v. Moss*, C-07-4632 JSW (EMC), 2008 WL 1995116 *1 (N.D. Cal. Apr. 2, 2008).

---

[1] Judge White noted these details in his order denying Plaintiff's motion for a temporary restraining order, but Plaintiff has not explained the different dates in its more recent briefing. There are no more readily apparent differences between the two copies of the security agreement.

3

Here, there is diversity jurisdiction, because the Plaintiff is a California corporation, Defendant is a Nevada corporation with its principal place of business in Tennessee, and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332.

Plaintiff argues that Defendant consented to personal jurisdiction in this case because the promissory note contained a forum selection clause stating, "This Note shall be construed in accordance with the laws of the State of California as applied to agreements made by and between parties in that state, and any action shall be brought in Marin County California." Pl.'s Supp. Br., Ex. A, Dkt # 21-1 at 7. The Ninth Circuit has held that accepting a forum selection clause evidences consent to personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Here, Defendant appears to have consented to jurisdiction in Marin County, California. Marin County is within the Northern District of California. Although this Court does not sit in Marin County, it applies California law in diversity cases.

Regardless, the Court has personal jurisdiction over Defendant even in the absence of consent. In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir.2011). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. P. § 410.10. The Due Process Clause requires that the nonresident defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). The party moving for default judgment has the burden of establishing that jurisdiction exists. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).

Specific personal jurisdiction over a nonresident defendant exists if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident

defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* If the plaintiff satisfies the first two elements, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

To satisfy the purposeful direction element, the Ninth Circuit requires that the actions of the nonresident defendant be purposefully directed at the forum based on an "effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the forum." *Mavrix Photo*, 647 F.3d at 1228. This test requires that the nonresident defendant 1) commit an intentional act, 2) that was expressly aimed at the forum state, and 3) that caused harm that the nonresident defendant knew would likely be suffered in the forum state. *Id.*

Here, Defendant entered into a contract that was executed in Kentfield, California. As noted above, the parties agreed that the contract should be construed in accordance with California law. Payments on the loan were to be made to the Plaintiff in California. These facts satisfy both the purposeful direction test and the requirement that the plaintiff's claim arises out of the defendant's forum-related activities, as Defendant 1) entered into a contract, 2) while in California, with the understanding that California law would be applied, and 3) knew that loan payments were to be made to Plaintiff, a California company, and that Plaintiff would suffer harm if the payments were not made. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985) (holding that exercising jurisdiction over party did not offend due process where party entered into contract expressly providing that forum state's laws would govern disputes).

It appears that Plaintiff has served Defendant. Plaintiff filed a proof of service showing that Jenna Bird at Debut Broadcasting Corporation was personally served on June 14, 2012. Service was made at the address listed for the company on the Secretary of State's records.

///

///

### B. Merits

In the Ninth Circuit, courts consider the following factors in deciding whether to grant a motion for default judgment: 1) the possibility of prejudice to the plaintiff, 2) the merits of plaintiff's substantive claim, 3) the sufficiency of the complaint, 4) the sum of money at stake in the action, 5) the possibility of a dispute concerning material facts, 6) whether the default was due to excusable neglect, and 7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Well-pled allegations in the complaint regarding liability, but not damages, are taken as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

The *Eitel* factors in this case weigh in favor of entering default judgment. The first three factors all relate to the merits of Plaintiff's case. Taking the allegations in the complaint as true, Defendant borrowed a sum of money from Plaintiff and defaulted on its contractual obligations to repay the money. The terms of the contract provide that upon default, the full amount of the contract becomes due and payable. Therefore, Defendant owes Plaintiff a debt. The above facts are sufficient to state a cause of action. Plaintiff has no other way to collect than through this action. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Thus, the prejudice, merits, and sufficiency factors all weigh in favor of entering default judgment.

The fourth factor—the sum of money at stake—is neutral. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *Tragni v. Souther Elec. Inc.*, C 09-32 JF (RS), 2009 WL 3052635 (N.D. Cal. Sept. 22, 2009). Here, although there is a substantial amount of money at stake, Defendant borrowed the money from Plaintiff, and there is nothing unreasonable about enforcing the contractual debt.

While there may potentially be disputes over the exact amount of money owed, it does not appear likely that Defendant would dispute that it owes a debt to Plaintiff. Plaintiff has provided copies of the contract at issue and supporting documents, which appear to be relatively straightforward. In addition, even though Defendant was served, and Plaintiff notified the CEO of Defendant about this motion for default judgment, Defendant has not appeared in this case or made any effort to defend itself. Nothing in the record suggests that Defendant defaulted due to

excusable neglect. Thus, the fifth and sixth factors also weigh in favor of entering default judgment.

Finally, the Court considers the Federal Rules' policy against entering default judgments. In general, "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But in this case, even though Defendant has been aware of this lawsuit since at least the day it was served with the complaint, and, taking the allegations in the complaint as true, was aware of its liability in this matter even longer, it has failed to participate in any way in the litigation. Consequently, a decision on the merits is not reasonably possible.

On balance, the *Eitel* factors in favor of granting default judgment outweigh the Federal Rules' policy favoring a decision on the merits. The Court therefore recommends that default judgment be entered against Defendant.

**IV.    Damages**

If default judgment is proper, the Court must determine the amount of damages. *See* Fed. R. Civ. P. 55(b)(2). The moving party has the burden of proving damages through testimony or affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see also Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Plaintiff has submitted a declaration attesting to the following facts. In January 2010, the parties executed a note for $375,000. The note, which is attached to the complaint, states that Defendant was to make monthly interest payments on the loan of $4,062.50 on the first day of each month for one year beginning on February 1, 2010. Beginning on February 1, 2011, Defendant was to make monthly payments of $8,532.40 in interest and principal. The note further states that interest shall accrue on the unpaid principal at the rate of 13% per annum, and any payment that is more than 10 days late shall accrue an additional 2% per annum until it is paid. The note is subject to the terms and conditions of the February 26, 2008 security agreement.

The full balance, along with any unpaid interest, will be due and payable on January 31, 2013. However, the security agreement states that that the Plaintiff may declare all obligations under the note due and payable immediately following default by the Defendant.

The security agreement itself states that it secures the earlier notes for $250,000 and $500,000, as well as "[a]ny and all future advances by the Secured Party to the Debtor, in whatever form," and "[a]ll liabilities of the Debtor to the Secured Party now existing or incurred in the future, matured or unmatured . . ." Dkt #1 at 9. Because of this language, it appears that the security agreement applies to the $375,000 loan at issue in this motion, and therefore that the entire amount of the loan is now due and payable following Defendant's default.

Plaintiff's counsel has submitted an affidavit stating that the chart attached to Plaintiff's motion for default judgment is "a correct statement of [the] account, maintained by RPI in its usual course of business, providing for all payments made by Debut and accrued interest." Dkt #15-1 at 3. The chart's first entry is on January 10, 2010. The principal balance for each date on the chart is the same, that is, $375,000. Each day, the chart adds $133.56 in interest. This number is reached by taking 13% of $375,000 and dividing the result by the number of days in a year. The chart also subtracts payments made by Defendant.

Plaintiffs do not claim that they are entitled to the additional 2% interest provided for by the note for payments that are more than 10 days late. Neither do Plaintiffs claim that they are entitled to compound interest or attorney fees.[2]

The declaration attached to Plaintiff's supplemental brief states that the total amount of principal and interest due as of July 31, 2012 was $448,056.22. The chart shows that the total amount as of that date was $448,058.22. The Court uses the number specifically attested to in the declaration. From July 31 until December 31 (the present date), interest at $133.56 a day results in additional damages $20,434.68. Thus, the Court finds that judgment should be entered in the total amount of $468,490.90.

**V.    Order to Show Cause**

Plaintiff's counsel's response to the Court's order to show cause states that counsel did not attend the hearing on this motion because he believed that no appearance was required, as the application was for default judgment by the Clerk, and no opposition to the motion was filed. But

---

[2] The note provides that attorney fees for an action brought by Defendant to enforce the note are recoverable. Dkt #1 at 6.

8

counsel does not deny that he received the undersigned's order specifically setting a hearing date for the motion. Counsel is advised that Defendant's failure to file an opposition to the motion does not affect the Court's calendar. However, as this is counsel's first failure to appear in this case, the Court discharges the order to show cause.

## VI. Conclusion

It is hereby ORDERED that the Court's December 6, 2012 order to show cause is discharged.

It is hereby RECOMMENDED that judgment be entered in the amount of $468,490.90 in favor of Plaintiff Remington Partners, and against Defendant Debut Broadcasting Corporation.

Within fourteen days after being served with a copy of this report and recommendation, either party may file written objections to this report and recommendation. *See* 28 U.S.C. § 636(b)(1). Failing to do so may constitute a waiver of those objections. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**Dated: December 31, 2012**

KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE